Benjamin Mills as counsel for defendants in error filed the following supplemental petition for a re-hearing.

As the coadjutof of Mr. Richardson in this cause, Í unite with him in soliciting a re-hearing,, and will add some considerations tending to improve some of the views which he has taken, without conceding that any of the points relied on by him are untenable.
I am aware that there is much land in this country recovered both by judgments at law and decrees in equity, the possession, of which cannot be regained on account of this expiration of demises in declaration. I would ask no better fortune than to be owner of what I personally know to be in that situation. Ruinous would be the consequences if. an invention is now made to recover such possessions. It was insisted by some of the bar, that courts of law would extend demises. This question was laid asleep by the decision of Owings vs. Marshall, which has been adhered to. Next it was insisted, that after the holder of an elder grant had procured his judgment in ejectment, and there defeated, a bill in chancery brought to sustain the entry held by the occupant, he could recover in equity even if his demise was expired, and that although the statute of limiation was in the way, the chancellor would lift him over the bar and give him the land, decided to be his, both at law and in equity.
*e 110U’
The case of Bowman vs. Violet met this delusion,and also, laid as was supposed, this last ray of hope in the dust. It has been the idea of some English chancellors and some of the bar in Kentucky, that the chancellor was a dispenser vrith legal difficulties, even statutes themselves, and that he could relieve against many of the hardships which the general operation of the rules of common law seemed to impose. This idea I hope is abandoned in Kentucky, and I trust will never be revived, and it is with regret observed, that the opinion now under review, tends to revive that error, which was heretofore laid asleep. The principles settled in the latter case are,
1st. That the chancellor has no right to relieve against statutes of any kind, and especially the statutes of limitations, admitting that cases of actual fraud may form an exception to the general rule, and
2ndly. That skilful management at law in gaining an advantage through legal process and proceedings in our courts, cannot form a case of actual fraud.
It is laid down in that case, that no such relief can be given by the chancellor, except when the conscience of the party is affected. This is the frequent language of the chancellors, and was employed in that case to distinguish actual in contradistinction to legal fraud. When the chancellor finds no actual fraud, he frequently says he cannot reach the conscience of the party. That is, the parly has been guilty of no actual, though he may be accused of constructive fraud.
The court in the case under consideration does not in terms dispute this. Indeed, if the case of Bowman vs. Violet is not assailed, it is evaded by alleging that the cases are different.
In principle, it is insisted they are not different, and indeed, their circumstances are not so varient as thecourt seems to suppose. But the court alleges in this case fraud at once. This is denied, and here is the great issue. The case must, therefore, depend on this inquiry, was there actual fraud? And that resolves itself into another inquiry, can a party be guilty of actual fraud in using merely the process and remedies of law? We answer in the negative, and will *306 endeavor to support that position. We will premise that it cannot be pretended that Simpson’s heirs did any thing unfair deluding their' adversaries. They met them in court, and there obtained from court, or the legal officers all the advantages they gained. They forged no title papers, alleged and proved no falsehoods, nor did they wheedle or couzin their adversaries out of their defence, or in any way cheat them, or vary their course, except by making use of judicial officers to do it. In doing this it is denied, solemnly denied, that there is, or can be any actual fraud. It is true parties may by combination commit frands in courts, but it is by combination of parties to cheat third persons. As for instance, A may confess a judgment to B, or suffer one by default, in order that B may secure A’s property. But when A im-pleads B in court in any manner, and by the decisions of the court, or the delays incident to justice gets an advantage, it is not fraudulent, unless A committed perjury in procuring those delays, and that perjury must be proved. Inducing a party by fraudulent representations to abandon his cause of action or de-fence, or to keep him away from trial by deception, are all frauds in fact. So are forging, or using forged and pretended title papers. But none of these things arc chargeable to Simpson’s heirs. They exhibited realities in all their evidence. They by no deceit checked the course of their adversaries, but met them fairly at every stage before the judicial tribunal. No outdoors address or deception was practised. How then can they be charged with fraud? It is denied that fraud can be so committed, and this is a point settled in Bowman vs. Violet, and a case to that effect is challenged.
Petition.
I will now go into the detail. Simpson’s first bill was fairly filed without injunction. It was not pre-* pared when compelled to go into trial, as it ought to be. Their ancestor was dead, and his infants were incompetent to prepare it. The counsel who had long struggled with it, and could not get it prepared as he wished to save their rights, when he knew time could not run against them, especially as they were possessors, withdrew the suit for the express purpose of preserving their equity, and with an avowed design to set it up in future. Here was not a suspicion of *307 fraud. It was a common occurrence, and often a prudent course; yet this court in scanning their conduct in this particular, will scarcely permit this retreat without suspicion? Shannon’s heirs came on with their ejectment, brought just before this dismission. They laid the demise at their own pleasure, and because they laid a short one, shall this circumscribe our defence? Or shall it be a circumstance to lay fraud on our shoulders? The ejectment was met fairly and fully, and was partially successful, and still there is no fraud. Here Shannon’s heirs rested securely four or five years. They brought a scire facias. It was defended fairly and in good faith, and there was no fraud. Simpson’s heirs appealed, and was unfortunate in this court on questions by no means clear or palpable. The cause returned and they applied for commissioners under the clear and indisputable statute, which was granted. Here the other side opposed the appointment and moved to amend the demise, which Simpson’s heirs opposed, and the court, not Simpson’s heirs, took time to consider. It is with regret that I perceive that wrong or fraud is attempted to be extracted from these acts of Simpson’s heirs. Can it be claimed of them that they were bound to abandon the claim for improvements, or be guilty of a fraud if they asked it? Were they guilty of a fraud in opposing the amendment of a demise; a question of that disputed nature? If so, every counsel or their clients, are guilty of a fraud daily in this court, in attempting to insist on points not sustained by the court. Perhaps the time taken in such arguments, and the time taken to advise thereon, in this court, may be, and often is fatal to the whole claim in dispute. That lapse of time and change of circumstances may ruin the opposite litigant, and is it possible this is fraudulent or unconscientious? Again, counsel in the court below, may often non-suit his adversary improperly, or exclude evidence, by which the cause is lost. An appeal is taken and the judgment reversed for this error; when the cause is again to be tried, the evidence may be burnt, if documentary, or be dead, if parol, and the cause is again lost and the claim forever gone on this account. Is the party or his counsel to be held guilty of actual fraud for obtaining the first illegal decision? Certainly such consequences cannot follow.
pet¡t¡on
Petition-
Tile- next legal movement was a motion to quash the commissioners report. Here the court decided in their favor, and there was no complaint of the decision. It must therefore according to a well known principle of law, be presumed correct, and no suspicion of fraud can arise. The next movement is the motion to amend the demise, opposed hy Simpson’s heirs and overruled. Was there fraud in ibis? The court could not order the amendment. The case of Owings vs. Marshall was conclusive. But suppose the court had the power, and wrongfully withheld its exercise, who is responsible for this, and who but this court could correct it? But above all, was it actual fraud to oppose the motion? If so every counsel who insists upon a wrong position is, or his client is, guilty of a fraud. It is hoped that such conclusion will be abandoned. Here the court resorts to negatives, and accuses our clients of fraud in not doing something to aid Shannon’s heirs. They said and did nothing more in court, which this court seems to think was a suppressio veri from which fraud may be inferred. It is alleged against them that they did not move for the appointment of commissioners de novo in order to give Shannon’s heirs the opportunity of laying them under conditions by compelling them to assent to amending the demise! If they knew, as well they might, as this court supposes, that the court would restrain the appointment, till consent to amend the demise was given, and that they would be caught in the snare by so doing, they acted right to decline i(. They therefore declined it as prudence dictated, and yet this prudent silence is construed into a badge of fraud! The next thing was the injunction, and here their not doing is made to operate against them! They did not immediately prepare their bill and present it in court for an injunction, in order to lay themselves liable to another snare from their adversaries, and to compel themselves to submit to losing the land by’amending the demise! They declined this prudently, if intentionally done, and then not acting again, is to operate against them, not by laches, but because they did not awaken their adversary and give them an advantage ! But how does the court ascertain the fact to be, that this prudent policy, of letting the demise expire, and the term pass by, was the reason why the injunction *309 was not asked in open court? As Mr. Richardson has observed it might have been out of the power of the counsel to prepare the bill, and it is usual to postpone to vacation, what cannot be well done in the bustle of a term. Perhaps the party might not be present to swear to it, or to get his surety ready. Sickness or absence from home might have occasioned all this instead of the motive imputed by the court, which latter motive is not fraudulent. The same impediment might have caused the application to magistrates. The Circuit Judge, like the bird of passage, as he frequently is, might have taken his flight, and this might account for the application to magistrates. Yet for all this we are charged with fraud! But we will not excuse the application to magistrates. The law gave the right to do so, and we protest against this right being construed into a fraud or a badge thereof, and deny the right of this court to infer fraud from an act, which the law of the land has tolerated, and of the chancellor to relieve against such applications. He may act on the bill-afterwards, but he cannot give or refuse relief because the magistrates have granted the injunction. The court has also said that we gave no information that we would apply to magistrates. In other words we did not give that notice which an express act of assembly says we must not give; and are charged with fraud for not giving it!! Shall our not doing acts of supererogation in favor of our adversary be brought still to bear against us?
Petition.
One thing more in this bill is noticed. The court says the bill gave but a partial history of the transaction ; that part was concealed from the magistrates. Can the court mean that we were bound to put in the bill, and were guilty of a fraud if we did not insert the whole history of the suit at law, the judgment, the stay thereof, the scire facias, the appeal, the proceedings under the occupying claimant law, and above all the approaching death of the demise? When was it ever heard that such a history was inserted? According to the most strict practice the bill was drawn containing every thing necessary for an injunction, and omitting what was unnecessary, and was one of those kind of bills setting up an entry against an elder patent and a judgment at law, on which injunctions have in all our courts been granted as a matter of course, on the usu *310 al ceremonies of releasing error, and giving bond with, surety being complied with. The real rule in all legal pleadings, is to set out what is necessary to attain the object and' no more; but here Simpson’s heirs is to-be guilty of fraud because they did not state more than they were bound, and more than is usual!! more than, law required!!!
Petition..
The court however seems to have forgotten what Shannon’s heirs were doing at this time. At the moment that the report of commissioners was quashed and none other applied for, instead of wasting their time in asking the court to-amend the demise, which the court could not grant, why not ask for a writ of habere facias possessionem fit once? Or rather why not take one from the clerk without motion during the term? The judgment was not of that term, and the clerk was bound to give the writ at once. They might have taken it and have entered under the Writ. This they failed to do, yet the court has not even imputed laches to them for not acting, although it has imputed fraud to us for being silent!
The court seems also to argue from a supposed de* feet in our answer, because we did not expressly deny “having fraudulently endeavored to procrastinate the issue of the habere facias, until the demise expired.”
The court admits that fraud is denied in general terms. Well, is not this enough when we were charged in general terms. The court says we did not expressly deny wishing to defeat the emanation of the writ of possession, avow we had no such object, and insist that we had acted with design of “honestly securing our just rights.” I am unable to perceive the difference between defeating the writ of possession and securing our just rights. The land añd its possession were the rights we had in jeopardy, and if the writ went, we lost all. What rights had we to eon-tendfor, if the writ issued? The truth is, our object could not be mistaken. It was to keep the land as long as we could if that was forever. To suppose that our vigorous defence was made at every stage, for any other purpose, is to suppose that we were spending our time and money in vain and expensive amusement. We therefore defended at every point and in every shape. But we did all this fairly and in *311 open court. We used no intrigues out of court to deceive our adversary, and ypt for doing openly and legally what we did do, we are convicted of fraud! If this position is true, every defendant who makes openly and fairly a defence, which ultimately fails is guilty of a fraud. How then will actual frauds be multiplied? Every unsuccessful party on this, and every other docket, is guilty of fraud, and Í deny that any difference can be made out between this, and every such case, and unequivocally deny that there is any actual fraud in conducting this defence to be found in the record. It is inferred from acts in court, and legal proceedings every one of which was met openly.
Petition.
But the court seems to conceive that we gained advantages by the decisions of the court below which we ought not to have had. For instance we got the appointment of commissioners, when we ought first to have been compelled to assent to the extension of the demise, and we finally got a motion to amend the demise overruled by our opposition. Suppose these decisions were erroneous (which we do not admit) and that tpey were procured by our opposition and exertions, what was the remedy? Certainly an appeal to this court and that only. It is clearly settled that such errors of a court of law, cannot be revised by the chancellor; nor can he relieve against their consequences; far less can he infer fraud from them, as is done in this case, and well settled principles are overturned by making suelva use of them, and we earnestly entreat the court to abandon such conclusions from them, or uses of them.
Upon the whole, we seriously deny that there is or can be any difference in principle, and there is scarcely any in detail between this case and that ofBowman and Violet, and we do insist that one has overturned the other, producing the glorious uncertainty in the law which is ruinous to society.
The principles settled in that case, are that there is no power in the chancellor to interfere, unless the advantage, against which relief is prayed, is gained by actual fraud; and secondly that gaining an advantage in courts, by managing legal proceedings openly, and even gaining erroneous decisions, cannot constitute that actual fraud, which warrants the interposi *312 tion of the chancellor. Here we do solemnly insist that we have gained no advantage but what we have gained openly and fairly in a court of law, without out-door’s management and address, and that conse'quently we are within the case of Bowman and Violet.
Petition.
There is one more point on which the court seems strongly to rely, which we will now touch. When our bill was filed, say the court, the demise was not expired and our adversaries had a right of entry then. This was also the case when our adversaries filed their answer in the office, but not when their answer was noted of record and filed in court. By way of defence (the court continues,) a defendant in a cross bill has a right to set up a legal claim touching the same subject of the bill; andas the defendants, Shannon’s heirs, claimed the possession of the land as a legal subject in their answer at the moment their demise or right of entry existed, they have a right to have it decreed on hearing, notwithstanding the other side has pleaded and relied on the statute of limitations.
This reasoning shall now be examined.
It will no doubt be conceded that complainants have as clear a right to reply and rely on the statute of limitations to a claim set up in an answer in the nature of a cross bill, as the defendant in the first instance has, to claims set up in the bill.. At what moment does the court end, in ascertaining whether the bar is complete, that is, when the number of years composing the bar has ended?
In case a claim is set up in a bill, to which the statute of limitations is pleaded, we count, not to the filing of the bill, but to the hour of the emanation of process. If the bill is filed before the five years, (or twenty years as the case may be) have expired, and yet lies in the office without process till the day after the bar has expired, the bar is completej and the bare filing the bill cannot save it. Formerly the practice, was, (and the right to use it still exists; seel Dig. 219,) if the defendant had any claims arising out of the same subject, for which he wished a decree over, he must file a cross bill and issue process thereon, and both suits were tried together, and in that case, to ascertain when the bar to the claim set up in the cross bill had expired, you must count to the date of the process on *313 the cross bill, and not to the filing of the cross bill or the answer to the original bill. But our act of assembly has allowed defendants to make interrogatories in their answers in lieu of a cross bill, which the courts have allowed to answer the same purpose of the cross bill in form, ar.d the statute has made process on such answers unnecessary, but complainants without process shall bo bound to take notice of, and answer them, after they are noted of record and not before. It then dearly follows, that that is the hour or moment to which we must count the statute or bar, and nothing is done to save the running of the statute till the answer is noted in court The statute is express “The opposite party shall not be bound to notice such answeras filed, till the same be entered in court;” I Dig. S. L. 226, Sec. 25. Nothing cán be more explicit. Will the answer with its crossbill incorporated, bind us and have the force of stopping the statute in our favor against the express direction of the statute? Certainly it ought not. This question is somewhat new. The hour of commencing and ending bars in statutes of limitation becomes important frequently, and has employed many jurists. The points thereon are generally well settled. Here, however, answers are allowed to stand in lieu of cross bills and that without process. This new invention required some provisions as to its operation; and the legislature has made it, and has fixed, the moment of its operation and binding force. An a no ver ü; the nature of a cross bill, noted on record, shat! be precisely in the same situation of a cross bill itself váti; procero thereon; but the court has given to if this dAci. before such notice on record, and cf this ire coim-dair.. We are bound by the answer when iho statute says we shall not be bound! Vie replied the statute of limitations and have proved it; yet that shield, which has protected so many, can do us no good! fs not this relieving against a statute" The defendants to our bill put in a paper in the office, which the statute declares, we shall not be bound to notice, but yet says the court it shall stop the running of the statute in our favor. At the moment this answer was noted in court, we had had near thirty rears adverse possession, and our adversaries had no right of entry, and yet we lose all! This question however nice itnaav apnear. has more *314 importance than would appear at first blush. Often times the statute of limitation of five years, in monied demands, is pleaded against bills setting up claims for money. And is replied to answers setting up such demands, and if the opinion in question stands, by analogy putting the answer into the office,-before the other is bound to notice it, will stop the statute. This is like the old English doctrine, which allowed a writ purchased without any service of process sufficient to stop the running of the statute of limitations, a doctrine long since exploded here; and this court has declared that the statute is as obligatory here on a court of equity, as on a court of law. See Allen vs. Kennedy, III Marshall.
Petition.
Petition.
Here is another instance of laches in the plaintiffs in error, if they had filed their cross bill in form, as they might have done, before their demise expired and amended process thereon, then there might have been some ground for the decision of this court. This however they chose not to do, but relied upon filing ■the substitute, the answer in the nature of a cross bill, in court and thus lost the hour which might have been saved.
We will further remark, that the court has said, if we had gotten no injunction, then our opponents would have been entitled to no relief. This is the first instance in which I have known the merits of a bill or cross bill depend upon the incidental circumstances of having obtained an injunction. I did conceive that such a bill or cross bill depended on its allegations, irrespective of their having been an injunction or not. I must therefore solicit the court to recaí this position; for it is untenable on principle.
I will notice one other question, more for the sake of practice in other cases, than from- its bearing in this, it is the opening the cause, directing new pleadings, and giving directions to our adversaries howto conduct their cause, through anew stage of pleadings so as certainly to defeat us.
For thirty years at least this court acted on all chancery records as the parties had prepared them, without a repleader or new commission. The statute was followed which authorized this court to give suchde- *315 cree as the court below ought to have done, and this rule was strictly adhered to, and the record was considered as closed. If the complainant or other party had left some part of his claim so dim, that its extent and dominions could not be perceived, he lost it, and the cause was decided as he had prepared it. For sending back the cause and calling for more proof, was always considered as advice to patties which belonged to counsel and not to this court, it is with regret that I have discovered that this practice has of late been departed from, and cannot avoid remonstrating against it, while there is any hope of restricting it to the ancient practice. I have seen in this court large claims lost, because there was no proof of heir-ship; because a judgment was not filed to sustain a sale by execution; or because a deed or patent was left out of the record, and those decisions adhered to. I have seen also many claims defeated because the pleading of the party claiming was defective, without any allowance of amendment, and never did 1 see a cause sent back as this, is, with directions to try in a court of law; then to amend pleadings and what to put in them, and what is more, a new decree on the new chancery issue to be formed before the proof on that issue is or can be known! This is indeed new in this court till some late cases squinted at the same practice. I must still protest against the court becoming the advisers of the parties how to shape their case, and trust it will not go farther than to decide the cases as the parties have shaped them. This new practice, if persisted in, has no reasonable or certain limitation; how far it can be extended, or \yhere it is to stop, cannot be ascertained, and the first time a caséis brought to this court will often insure a second and a third. Something new will be shewn not known to the court when the first direction is given, which will render it doubtful whether the first set of directions can be carried into effect. Indeed the first decision here will only be a commencement of the heat of the controversy, if the practice is extended. I do therefore sincerely hope the practice will be reconsidered, and the old well trodden ground be reoccupied by the court.
Petition.
The length of this supplement may need an apology as the petition drawn by Mr. Richardson is of conside- *316 rabie length and much to the point. I trust however, that a firm conviction strongly felt, that my clients have not had the correct rulés oí law and equity administered to them, which has been to others, will furnish that apology.
I earnestly therefore solicit a re-hearing of the case*